# EXHIBIT C

MEMORANDUM

To: Sean P. McCormick, Partner

Thompson Hine, LLP

Austin Landing

10050 Innovation Drive, Suite 400

Dayton, Ohio 45342-4934

From: William J. Warfel, Ph.D., CPCU, CLU

Professor of Insurance & Risk Management

Indiana State University

Insurance & Risk Management Program

Terre Haute, Indiana 47809

Re: Boater's Emergency Service, LLC

V. Joseph B. Sebring, et al. V.

Rick Bersnak & The Keenan Agency

Date: March 31, 2023

Attorney Sean P. McCormick and Attorney Robert Burger, both of whom represent third–party plaintiff, Joseph B. Sebring, requested that I evaluate whether third-party defendant, Rick Bersnak & The Keenan Agency bear professional responsibility in connection with the servicing of the Joseph B. Sebring/Archon account. The

1

documents upon which I relied in making this evaluation are identified, attached as Appendix. These documents are contained in a link that was e-mailed to me by Attorney McCormick. My preliminary opinions are as follows:

1. This legal case concerns an ocean marine insurance policy that Rick Bersnak, Vice President of Commercial Sales and Business Development at The Keenan Agency, Inc., as well as The Keenan Agency, Inc., itself, placed with Ace American Insurance Company (a member of the Chubb Insurance Group) on behalf of Joseph B. Sebring, Archon Hat 80 (hereinafter referred to collectively as "Sebring/Archon"). In the underlying case, Boater's Emergency Services, LLC, contended that Sebring/Archon owed it about $491,577.69 in connection with a Marine Wreck Removal Contract that had been signed by Sebring/Archon shortly after its 75 feet Hatteras Motor Yacht (named the "JudeSea") had drifted into a jetty (a rock), and began to sink. Sebring/Archon contend that, in signing this Marine Wreck Removal Contract, it had relied upon a representation made by an adjuster with Chubb to the effect it had full coverage connected to this mishap under a Masterpiece, ocean marine insurance policy ("Masterpiece Policy") that had been issued by Chubb, this policy having been placed with Chubb by Rick Bersnak, an experienced, commercial insurance agent upon which Sebring/Archon had relied in servicing a large portfolio of policies procured by Sebring/Archon, as well as Joseph B. Sebring, individually, over many years. In other words, Mr. Sebring responded that, assuming he bore financial responsibility for wreck removal/salvage services that had been provided by Boater's Emergency Services, LLC, then, in turn, Rick Bersnak and The Keenan Agency bore professional responsibility to Sebring/Archon in

connection with their errors/omissions that caused the ocean marine insurance policy ("Masterpiece Policy") to be deficient, meaning that a strict reading of the policy language contained in the applicable Masterpiece Policy resulted in no coverage for the wreck removal/salvage services that had been ably provided by Boater's Emergency Services, LLC shortly after the incident (mishap), referenced above.

2. As referenced above, an indisputable fact, in this case, is that the 75 feet Hatteras Motor Yacht was insured under an ocean marine insurance policy ("Masterpiece Policy"). This yacht became inoperable on September 11,2021 on account of engine failures, and an anchor was dropped to prevent it from drifting. Because of substantial wind, however, the anchor was unable to hold the yacht in place, and the yacht drifted, and struck a jetty (a rock), with the result being that the yacht began to sink. Given these indisputable facts, the fact that it was insured under an ocean marine insurance policy, and the sequence of events that occurred on September 11,2021, resulting in the sinking and recovery of the yacht, is coverage afforded under the applicable Masterpiece Policy issued to Sebring/Archon? This coverage issue clearly hinges on the application of the Captain Warranty Endorsement, identified in the Declarations Page of the policy under "Vessel Forms and Endorsements." Under this form/endorsement, it states that "[t]his endorsement applies to an insured vessel [the 75 feet Hatteras Motor Yacht] only if shown on the Declarations Page [confirmed].… It is a condition of this policy that the insured vessel, while being navigated [whether it was or was not being

navigated at the time of loss will be addressed by a marine expert witness retained by third-party plaintiff, Sebring/Archon], is under the care, custody and control of the captain shown below. Captain Jay Franklin."

Most importantly, in an e-mail dated October 13,2021 from Rick Bersnak to Jeff Barton at Chubb, Mr. Bersnak asserted that The Keenan Agency was not asked by underwriting at Chubb whether "Captain Jay [Franklin] was still the captain for the Sebring's." Mr. Bersnak further stated that, had underwriting at Chubb made this inquiry, The Keenan Agency "could have easily provided information about the new captain [Jim Dale] and that Jay was gone." The implication, of course, is that Mr. Bersnak and The Keenan Agency were well-aware of the fact that Jay Franklin was no longer the Captain of the Sebring/Archon yacht when the Masterpiece Policy came up for renewal on June 24,2021. Several months before this mishap occurred on September 11,2021, Mr. Bersnak and The Keenan Agency had a duty to act on this knowledge, and request that underwriting delete from the Captain Warranty Endorsement Jay Franklin as the Captain and add Jim Dale as the Captain. This omission is particularly egregious because they had knowledge concerning Jim Dale's qualifications to serve as Captain, suggesting that underwriting would have routinely approved a request to insert Jim Dale's name as the new Captain of the Sebring/Archon yacht, meaning that full coverage under the Masterpiece Policy would have been in place on the September 11,2021 date of loss, but for the glaring omission of Rick Bersnak and The Keenan Agency. How did Mr. Bersnak and The Keenan Agency know well before the Masterpiece Policy came up for renewal on June 24,2021 "that Jay [Franklin] was gone [as the Captain of the

4

Sebring/Archon yacht]"? Well before the season for boating started, perhaps in March or April 2021, Jay Franklin had informed Mr. Sebring that he would not be able to work during the coming boating season because of illness(cancer), meaning that he had been forced to retire prematurely. This fact is confirmed by Joseph B. Sebring. Of course, the implication is that Jay Franklin was not aboard the yacht on the September 11,2021 date of loss, purportedly voiding coverage under the terms of the Captain Warranty Endorsement, assuming for the sake of argument that this loss occurred "while [the yacht was] being navigated [to be opined on by the marine expert retained by Sebring/Archon]."

3. Rick Bersnak and The Keenan Agency committed an error/omission in not identifying in the Captain Warranty Endorsement who in fact was serving as the Captain on June 24,2021, the date that the short-term policy that had been issued by Chubb expired, replaced by a new policy that had been issued by Chubb (the inception date being June 24,2021, and the expiration date being June 24,2022) through Rick Bersnak and The Keenan Agency. Had Rick Bersnak and The Keenan Agency made an inquiry concerning who was serving as the captain as of June 24, 2022, of course, Sebring/Archon would have identified Jim Dale as the new Captain, explaining that the old Captain, Jay Franklin, had previously retired on account of health issues, referenced above, replaced by new Captain Jim Dale. With due diligence on the part of Rick Bersnak and The Keenan Agency, this error/omission in the identification of the captain would not have occurred, meaning that full coverage would have been available under the Masterpiece Policy in place on the September 11,2021 date of loss. The record confirms that

5

Rick Bersnak and The Keenan Agency failed to follow custom and practice in the industry, neglecting to send out a questionnaire to Sebring/Archon containing the appropriate inquiry, referenced above, shortly before the June 24,2021 date of renewal through Rick Bersnak and The Keenan Agency.

4. Rick Bersnak is an experienced, commercial insurance agent who serviced the Sebring/Archon account for many years, this account including multiple yachts insured, of course, under ocean marine insurance policies. Any competent, experienced, commercial insurance agent who services a major account with multiple yachts insured under ocean marine insurance policies knows that coverage is contingent on adherence to protective warranties, the breach of which automatically voids coverage. In the case of ocean marine insurance, the potential magnitude of the risk of loss is so substantial that the exposure to loss is uninsurable in the absence of protective warranties, including the Captain Warranty Endorsement. For this reason, in arriving at a decision in terms of whether to accept the risk, and in establishing an adequate rate to be charged, Chubb understandably, pursuant to custom and practice, reserved the right to evaluate the credentials and competency of the new, proposed Captain, in this case, Jim Dale. An omission by the insurance agent to report to the carrier the identity of the new Captain (Jim Dale) automatically voids coverage, and Rick Bersnak and The Keenan Agency were well-aware of this fact, the fact being that this omission transformed a perfectly insurable risk into an uninsurable risk. See Warfel, William J., and Asperger, Jeffrey J., "Builders Risk and Installation Form:

6

Inland Marine Insurance or Property Insurance?" <u>The John Liner Review</u>, Winter 2008, pp. 51-65, for an identification and discussion of coverage features commonly contained in both inland marine and ocean marine insurance policies, including, most importantly the presence of protective warranties, the breach of which automatically voids coverage, the intent being to exclude uninsurable exposures to loss.

5. A competent, experienced, commercial insurance agent would have recognized that a special relationship existed concerning the Sebring/Archon account in relation to its servicing by Rick Bersnak and The Keenan Agency. For example, in a December 23, 2021 e-mail from Rick Bersnak addressed to Uriel Senteno, a broker at Amwins Access Insurance Services, LLC (AAIS), who provided assistance in connection with the procurement of a short-term policy on the yacht until procurement of a long-term policy could be put into effect with an inception date of June 24, 2021, Rick Bersnak acknowledged that "Mr. Sebring has been a commercial lines and personal lines account of mine for over 40 years…. He has owned large boats since the early 80's (36 feet and over) …. Over the last 12 years or so, he has owned several Hatteras' ranging from 74 to 84 feet. These boats have always had a captain, as required by the insurer… [Chubb], and I believe he had the same captain until May of 2021 [when this person, Jay Franklin, retired on account of health issues; in fact, as referenced above, Sebring informed Bersnak in March or April 2021 to the effect that Jay Franklin had retired, and left his position as the Captain of Sebring's yacht on account of health issues, cancer] …. At this time

7

[March or April 2021, as opposed to May 2021], he [Sebring] hired a new captain [Jim Dale] who had an acceptable resume, with local knowledge and experience…. Mr. Sebring probably has more experience with these boats than most Great Lakes captains over the last 40 years and certainly the last 15." The existence of a special relationship means that the custom and practice is for the agent to advise the client, and examine the policy, including the Captain Warranty Endorsement, to confirm that it matches the exposure to loss. Given that there was not a match in terms of who was identified as the Captain in the Captain Warranty Endorsement (Jay Franklin), and who was actually, currently serving as the Captain on Sebring's yacht (Jim Dale), the custom and practice is for an experienced, commercial insurance agent such as Bersnak to alert the underwriter concerning this discrepancy, and request the removal of the old Captain (Jay Franklin), and the insertion of the new Captain (Jim Dale).

First, Rick Bersnak and The Keenan Agency knew that the old captain, Jay Franklin, had retired in March or April of 2021, meaning that there was a duty to advise Sebring/Archon concerning the need to put Chubb on notice concerning this retirement before the short-term policy, referenced above, expired on June 24, 2021. Had this duty to advise been fulfilled by Rick Bersnak and The Keenan Agency, Sebring/Archon would have put Chubb on notice, identifying the new Captain as Jim Dale. Given that Jim Dale had an acceptable resume, with local knowledge and experience, Chubb most likely would have still issued the long-term Masterpiece Policy on June 24, 2021, but with a Captain Warranty Endorsement identifying Jim Dale as the Captain as opposed to Jay Franklin being

8

identified as the captain. Such is the case because this change in terms of who served as the captain did not result in a material increase in the risk of loss. In other words, both Jay Franklin and Jim Dale were highly qualified to serve as the Captain of Sebring's yacht. Under this scenario, the September 11,2021 loss would have been paid, given that Chubb's basis for its claim denial was that it "determined that the loss is not covered under the policy due to the fact that Jay Franklin was not in the Care, Custody, and Control of the vessel at the time of the loss." See September 30,2021 Chubb claim denial letter addressed to Archon Hat 80, LLC in care of The Keenan Agency, from Stuart Barnhardt, Claim Director, ACE Recreational Marine Claims, Chubb North America Claims.

Second, Rick Bersnak and The Keenan Agency most likely could have successfully negotiated with the Chubb underwriter in terms of  (1) simply requiring that a qualified captain be aboard the vessel during a voyage on the water, as opposed to identifying a single, named captain, who could be unavailable, for whatever reason, allowing for maximum flexibility in the use of the yacht, and (2) identifying relevant criteria for assessing whether an individual qualifies as a captain in terms of the possession of a license, and local knowledge, and experience. The risk of loss would not have been increased, and Jim Dale's qualifications would have matched the relevant criteria, meaning that Chubb would have paid the September 11,2021 loss. Indeed, in the e-mail addressed to Uriel Senteno from Rick Bersnak dated December 23,2021, referenced above, Rick Bersnak confirmed that on the September 11, 2021 date of loss when the engines failed, the new captain recently hired was aboard (Jim Dale), and "[t]he engines failed and [the

9

new captain, Jim Dale] immediately went to the engine room to see if he could determine what was wrong….. It appeared that there was a carburetor problem, so they put the anchor down while they figured out what to do. The anchor would not hold, and the wind started blowing toward the island eventually blowing the boat onto a man-made rock barrier…."; in other words, Jim Dale followed proper protocol, and an Act of God (wind) caused the loss, meaning that there was no negligence on Jim Dale's part-the risk of loss had not been increased under Jim Dale's "watch".

Third, Rick Bersnak and The Keenan Agency most likely could have successfully negotiated with the Chubb underwriter in terms of the deletion of the Captain Warranty Endorsement concerning those specific voyages on the water in which Joseph B. Sebring, the owner of the yacht identified in the Declarations Page of the policy, was piloting the yacht at the time of the loss. Given Mr. Sebring's superior qualifications, referenced above, this deletion would not have materially increased the risk of loss. Had this deletion been successfully negotiated by Rick Bersnak and The Keenan Agency, the September 11,2021 loss would have been paid by Chubb. This fact is confirmed in a September 14,2021 e-mail from Rick Bersnak addressed to Heather Hammond, the customer service representative at The Keenan Agency. "Joe [Sebring] was piloting the boat when the engines died out anyhow," at which time the boat was anchored by Joe Sebring, but the wind caused the boat to become unanchored, and it drifted into a jetty (an Act of God, certainly not negligence on the part of Joe Sebring). Of course, the result was that

a claim denial letter was sent to Joe Sebring, referenced above. Most importantly, in connection with procuring a short-term policy to provide coverage for the yacht until June 24, 2021, Rick Bersnak sent an e-mail dated February 2, 2021, addressed to customer service representative, Heather Hammond, also employed by The Keenan Agency, in which Mr. Bersnak acknowledged the fact that "Joe [Sebring] does operate the boat from time to time." Instead of submitting a request to the underwriter of the proposed, short-term policy to add Joe Sebring as an additional captain identified in the Captain Warranty Endorsement, in which case this request would have been routinely approved by the underwriter in view of Mr. Sebring's superior qualifications to operate the yacht, meaning that full coverage would have been in place for the September 11, 2021 mishap, referenced above, Rick Bersnak made a pointless inquiry concerning "the definition of who is insured." While Joe Sebring clearly qualified as a "covered person" on the September 11, 2021 date of loss ("covered person" means you- Archon Hat 80, LLC- Archon Hat 80, LLC is Joe Sebring's limited liability corporation connected to the yacht), the fact remains that the Captain Warranty Endorsement automatically voids coverage for those instances in which the identified captain contained in the Captain Warranty Endorsement-Jay Franklin-was not in the Care, Custody, and Control of the vessel at the time of loss. Of course, given the special relationship, referenced above, Rick Bersnak knew, or should have known, that on occasion, the yacht identified on the Declarations Page would be solely "in the Care, Custody, and Control" of Joe Sebring as opposed to Jay Franklin, meaning that coverage would be automatically voided while such was the case. An experienced, commercial insurance agent always addresses coverage gaps of this

11

sort, or at a bare minimum, at least documents the existence of coverage gaps of this sort for the benefit of the client (Joseph B. Sebring), meaning that Rick Bersnak and The Keenan Agency breached its professional responsibility to Joe Sebring (the client).

6. In asserting that Rick Bersnak and The Keenan Agency most likely could have negotiated a "fix" with the Chubb underwriter, removing the requirement contained in the Captain Warranty Endorsement to the effect that a specific, identified individual must be aboard the yacht at the time of loss in order for coverage to be applicable under the Masterpiece Policy, Rick Bersnak and The Keenan Agency bears professional responsibility because they were **NOT** entitled to rely on the prior insurance agency (Alliance Marine, an independent broker/agent located in Florida, who also had a contractual relationship with Chubb, as did The Keenan Agency, an agency located in Dublin, Ohio), unreasonably assuming, incorrectly, that the Alliance Marine Agency had previously negotiated the necessary "fix", referenced above. Such is the case because The Keenan Agency does **NOT** appear to have a prior, historical relationship with the Alliance Marine Agency. For a detailed discussion concerning this reliance issue in a similar agent errors & omissions case, see Warfel, William, "Agent/Broker Errors & Omissions in An Illustrative Commercial Property Insurance Case: A Risk Management Perspective," Journal of Risk Education, 2019, pp. 24-34.

7. My opinions are based upon my analysis of (1) the documents made available to me by third-party plaintiff Attorney Sean McCormick, which are referenced and cited in this Memorandum, as well as (2) my training, education, and experience, as reflected in my CV, attached as Appendix, which identifies (a) the degrees and professional designations I have earned, including a Ph.D. with a major in Insurance and Risk Management from Indiana University, Bloomington, and the CPCU (Chartered Property Casualty Underwriter) professional designation awarded by the American Institute for Chartered Property Casualty Underwriters, (b) the agent/broker errors & omissions cases identified in my CV, in which I was retained as a testifying expert witness, (c) an article published in The John Liner Review that identifies and discusses coverage features commonly contained in both inland marine and ocean marine insurance policies, attached as Appendix, and (d) an article published in the Journal of Risk Education that discusses whether an insurance agency is entitled to rely on a prior insurance agency, simply assuming, incorrectly, that the prior insurance agency undertook a detailed coverage analysis, assuring that the policy in question matched the client's exposure to loss, attached as Appendix.

8. I reserve the right to revise and supplement this Memorandum upon reviewing additional discovery in this case. I am being compensated for serving as a testifying expert witness in this case, per my Fee Schedule, attached as Appendix.

*William J. Warfel*

William J. Warfel

March 31, 2023

13